**Opinion issued March 21, 2013**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-11-01123-CR

_____

**JOSE JUAN CARDENAS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 184th District Court**
**Harris County, Texas**
**Trial Court Case No. 1309968**

# OPINION ON REHEARING[*]

Appellant Jose Juan Cardenas pleaded guilty to the first-degree felony offense of aggravated robbery with a deadly weapon. *See* TEX. PENAL CODE ANN. § 29.03 (West 2011). The trial court entered judgment on the guilty plea. On appeal, Cardenas contends that the evidence was insufficient to support the trial court's judgment and to support the assessment of $294 in court costs. We affirm.

## Background

Cardenas was indicted for aggravated robbery with a deadly weapon. The indictment alleged that Cardenas "did . . . while in the course of committing theft of property owned by [the complainant], and with intent to obtain and maintain control of the property, intentionally and knowingly threaten [the complainant] and place [him] in fear of imminent bodily injury and death," and that he "did then and there use and exhibit a deadly weapon, namely, A FIREARM."

Prior to entering his guilty plea, Cardenas executed a two-page form document, the first page of which contains the following waiver of constitutional rights, agreement to stipulate, and judicial confession:

---

[*] Appellant has filed a motion for reconsideration en banc, solely challenging our disposition of the second issue relating to court costs. Treating the motion as one for rehearing, we grant rehearing and withdraw our opinion and judgment of February 7, 2013, issuing this opinion in its stead. Our disposition of the appeal remains unchanged. Because we are issuing a new opinion, the motion for en banc reconsideration of our prior opinion is moot. *See Brookshire Bros., Inc. v. Smith*, 176 S.W.3d 30, 41 & n. 4 (Tex. App.—Houston [1st Dist.] 2004, pet. denied).

2

In open court and prior to entering my plea, I waive the right of trial by jury. I also waive the appearance, confrontation, and cross-examination of witnesses, and my right against self-incrimination. The charges against me allege that in Harris County, Texas, **JOSE JUAN CARDENAS**, hereinafter styled the Defendant, heretofore on or about **JUNE 15, 2011**, did then and there unlawfully, while in the course of committing theft of property owned by [the complainant] and with intent to obtain and maintain control of the property, intentionally and knowingly threaten and place in fear of imminent bodily injury and death, and the Defendant did then and there use and exhibit a deadly weapon, namely, A FIREARM.

The second page of the form includes the recital that "I understand the above allegations and I confess that they are true and that the acts alleged above were committed on June 15, 2011." The form further states: "In open court I consent to the oral and written stipulation of evidence in this case . . . ." The document bears Cardenas's signature, sworn and subscribed before a deputy district clerk on September 20, 2011. This page was also signed by the defense attorney, who thereby confirmed that he represented Cardenas, and discussed with him the document and its consequences. The attorney further confirmed that he believed Cardenas knowingly and voluntarily executed the document after their discussion. The same document was signed by an assistant district attorney, indicating consent to and approval of Cardenas's waiver of trial by jury and stipulation of evidence.

After Cardenas, his attorney, and the district attorney executed the stipulation of evidence and judicial confession, the document was filed with the papers of the case, as evidenced by the file stamp of the district clerk, dated

3

September 20. After these events took place, Cardenas appeared before the trial judge, who signed the same form, thereby confirming that she approved his waiver of constitutional rights, agreement to stipulate, and judicial confession, and that he entered a plea of guilty. The trial judge admonished Cardenas of the consequences of his plea and ascertained that he entered his plea knowingly and voluntarily after discussing the case with his attorney. In a separate sworn document also executed on September 20, Cardenas waived the right to have the court reporter record his plea, and he specifically acknowledged: "I have read the indictment and I committed each and every element alleged."

The trial court ordered the preparation of a presentence investigation report. After a hearing, the court found Cardenas guilty and sentenced him to 25 years in prison, stating on the record that he would receive credit for 118 days already served. The final judgment assessed $294 in court costs and stated, "The Court ORDERS that upon release from confinement, Defendant proceed immediately to the Harris County District Clerk's office. Once there, the Court ORDERS Defendant to pay, or make arrangements to pay, any remaining unpaid fines, court costs, and restitution as ordered by the Court."

Represented by the Harris County Public Defender's office, Cardenas brings this appeal.

Analysis

Cardenas raises two separate issues challenging the sufficiency of the evidence to support the judgment. First, he challenges the sufficiency of the evidence to support the judgment of conviction. Second, he challenges the sufficiency of the evidence to support the judgment's award of costs.

## I.      Sufficiency of evidence to support conviction

In his first issue, Cardenas argues that the evidence in the record is insufficient to support his conviction because there is no statement by him, there is no evidence independent of his guilty plea, and the paper he signed "has no connection to the specific charges in this conviction." He therefore argues that no evidence was produced to support the conviction. In response, the State argues that Cardenas entered a judicial confession that was sufficient to support the judgment of guilt.

In a review of the sufficiency of the evidence to support each element of a criminal offense, "we consider all of the evidence in the light most favorable to the verdict to determine whether, based on that evidence and the reasonable inferences therefrom," the factfinder was rationally justified in finding guilt beyond a reasonable doubt. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). Article 1.15 of the Texas Code of Criminal Procedure provides that in the event of a felony conviction based upon a guilty plea in lieu of a jury verdict, "it shall be

necessary for the state to introduce evidence into the record showing the guilt of the defendant and . . . in no event shall a person charged be convicted upon his plea without sufficient evidence to support the same." TEX. CODE CRIM. PROC. ANN. art. 1.15 (West 2005). The "[e]vidence offered in support of a guilty plea may take many forms," including a "written stipulation of what the evidence against him would be," and such a stipulation "will suffice to support the guilty plea so long as it embraces every constituent element of the charged offense." *Menefee v. State*, 287 S.W.3d 9, 13 (Tex. Crim. App. 2009). A defendant who pleads guilty need not concede the veracity of the evidence to which he stipulates, but if he does, the court will consider the stipulation to be a judicial confession. *See id.*; *Stone v. State*, 919 S.W.2d 424, 426 (Tex. Crim. App. 1996).

A person commits robbery if, in the course of committing theft, and with intent to obtain or maintain control of property, he intentionally or knowingly places another in fear of imminent bodily injury or death. TEX. PENAL CODE ANN. § 29.02(a) (West 2011). Theft is the unlawful appropriation of property with the intent to deprive the owner of the property. *See id.* § 31.03(a). A person commits aggravated robbery when he commits robbery and uses or exhibits a deadly weapon. *See id.* § 29.03(a)(2). By definition, a firearm is a deadly weapon. *See id.* § 1.07(a)(17)(A). Accordingly, to support the judgment of guilt, Cardenas's judicial confession of aggravated robbery had to include theft of property, use of a

6

firearm, and placing a person in fear of imminent bodily injury or death. *See Menefee*, 287 S.W.3d at 13.

Cardenas signed a document titled "Waiver of Constitutional Rights, Agreement to Stipulate, and Judicial Confession." The stipulated facts mirror the allegations in the indictment, in that Cardenas confessed that he "did then and there unlawfully, while in the course of committing theft of property owned by [the complainant], and with intent to obtain and maintain control of the property, intentionally and knowingly threaten and place [him] in fear of imminent bodily injury and death, and [Cardenas] did then and there use and exhibit a deadly weapon, namely, a firearm." Cardenas waived "the right of trial by jury . . . [and] the appearance, confrontation, and cross-examination of witnesses, and my right against self-incrimination." He specifically acknowledged, "I understand the above allegations and I confess that they are true and that the acts alleged above were committed on June 15, 2011," the date alleged in the indictment. In addition, he consented to "the oral and written stipulations of evidence in this case" and acknowledged that he "read the indictment and committed each and every element alleged."

Thus, Cardenas signed a sworn written statement covering all elements of the charged offense, admitting his culpability and acknowledging that the allegations against him were true and correct. He also acknowledged,

independently of his guilty plea, that he "committed each and every element alleged." *See Menefee*, 287 S.W.3d at 13. When an appellant has provided a valid judicial confession to all of the elements of the offense, the record need not provide further proof. *See id.* at 13–14, 17–18.

Cardenas nevertheless argues that there is no evidence supporting the plea because the page bearing his signature "has no connection to the specific charges in this conviction." The argument refers to the fact that the "Waiver of Constitutional Rights, Agreement to Stipulate, and Judicial Confession" is a two-page document, and the description of the charges appears on the first, unsigned, page, while the signatures of Cardenas, the deputy district clerk, the defense attorney, the prosecutor, and the trial judge all appear on the second page. Cardenas asserts that there is "no connection" between the two pages of the document, which appear in succession in the clerk's record, "other than their placement in the record." The argument necessarily fails because the second page bearing the signatures makes no sense without reference to the first. The first sentence of the second page states: "I understand the above allegations and I confess that they are true and that the acts alleged above were committed on June 15, 2011." That sentence is devoid of substance without reference to the preceding page, which does contain a recitation of the allegations against Cardenas. The other signatures on the page similarly reference the entirety of the

8

document.  The defense attorney indicated by his signature that "this document" was executed by Cardenas "knowingly and voluntarily and after I fully discussed it and its consequences with him."  The assistant district attorney indicated by his signature consent to and approval of "the above waiver of trial by jury," which similarly appeared on the foregoing page.  The trial judge by her signature confirmed that "[t]his document" was executed by the aforementioned parties "and then filed with the papers of the case."  The clerk's record is accompanied by the Certificate of the Clerk, certifying that its contents are "true and correct copies of all proceedings, instruments and other papers," and Cardenas raises no objection to the accuracy of the clerk's record.  *See* TEX. R. APP. P. 34.5.

We reject the implausible contention that the second page of the stipulation and judicial confession signed by Cardenas in connection with his anticipated guilty plea has no connection to the specific charges described on the first page of that document.  We hold that the evidence is legally sufficient to support Cardenas's conviction, and we overrule this issue.

## II.    Sufficiency of evidence to support court costs

In his second issue, Cardenas argues that the evidence is insufficient to support the judgment against him assessing court costs of $294.  He did not object in any way to the amount of the costs in the trial court or the procedure by which the amount of costs was determined, but no such objection was required to raise an

9

appellate challenge to the sufficiency of the evidence to support the award of costs. *See Mayer v. State*, 309 S.W.3d 552, 556 (Tex. Crim. App. 2010). We review the sufficiency of the evidence to support the award of costs by viewing all record evidence in the light most favorable to the award. *See id.* at 557.

The argument on appeal is premised entirely on the fact that when the clerk's record was originally prepared, no bill of costs was included despite the fact that it was specifically requested. *See* TEX. R. APP. P. 34.5(b). Article 103.001 of the Texas Code of Criminal Procedure provides:

> A cost is not payable by the person charged with the cost until a written bill is produced or is ready to be produced, containing the items of cost, signed by the officer who charged the cost or the officer who is entitled to receive payment for the cost.

TEX. CODE CRIM. PROC. ANN. art. 103.001 (West 2006). Cardenas thus argues that the record "is completely silent and the evidence insufficient as to what the court costs were and if that amount is correct or appropriate." In particular, Cardenas contends that he is unable to determine if attorney's fees were incorrectly included as part of the $294 award of costs in the trial court's judgment. *See id.* art. 26.05(g) (West Supp. 2012) (requiring courts to consider a defendant's ability to pay before assessing "costs of the legal services provided" as court costs).

### a. Supplementation of record with bill of costs

Chapter 103 of the Code of Criminal Procedure governs the collection of costs and recordkeeping in criminal cases. The district clerk is required to "keep a

fee record," which must contain "a statement of each fee or item of cost charged for a service rendered in a criminal action or proceeding." *Id.* art. 103.009(a)(1). Article 103.006 provides that "[i]f a criminal action . . . is appealed, an officer of the court shall certify and sign a bill of costs stating the costs that have accrued and send the bill of costs to the court to which the action or proceeding is transferred or appealed." *Id*. art. 103.006. No document constituting a bill of costs in this case had been created, certified, signed, and sent to the court of appeals by the time Cardenas filed his appellant's brief, in which he objected to the sufficiency of the evidence supporting an award of costs. Nevertheless, the rules of appellate procedure provide that "[a] court of appeals must not affirm or reverse a judgment or dismiss an appeal for formal defects or irregularities in appellate procedure without allowing a reasonable time to correct or amend the defects or irregularities." TEX. R. APP. P. 44.3. Moreover, we are specifically authorized to direct the trial court clerk to supplement the record with any relevant omitted item. TEX. R. APP. P. 34.5(c)(1), (3). Accordingly, based upon these authorities, and to facilitate our review, we ordered the trial court clerk "to prepare, certify, and file a supplemental record containing a bill of costs," and in the event no bill of costs then existed, we ordered "the trial court clerk or an officer of the court . . . to

11

prepare a bill of costs for inclusion in the supplemental record."[1]  Cardenas filed a written objection to our order.[2]

Cardenas first objected that this court should not have ordered a supplemental record containing a bill of costs, arguing that the Fourteenth Court of Appeals, in *Johnson v. State*, recently held in a similar circumstance that a document created after the judgment was rendered cannot be considered on appeal.[3]  We note, however, that in *Johnson* no party apparently argued, and the

---

[1]     Cardenas argues that "[t]he plain language of 103.006 references internal documentation between different courts" and is "different from the cost bill contemplated by 103.001."  We disagree and find no basis in the code for Cardenas's suggestion that different bills of costs are contemplated by articles 103.001 and 103.006.  Cardenas does not address the fact that article 103.006 expressly applies to the circumstance in which "a criminal action or proceeding . . . is appealed," as is the case in this direct appeal.  TEX. CODE CRIM. PROC. ANN. art. 103.006.  Even more critically, Cardenas has presented no argument about the effect of appellate rule 44.3, discussed above, and he presents no argument that we have misapplied that rule by requesting correction of a defect in appellate procedure.  *See* TEX. R. APP. P. 44.3.

[2]     We note that the State has also taken the position that we lack authority to order the district clerk to prepare a bill of costs and provide it to us as a supplemental record.  However, the State's position in this regard is expressly predicated on its contention that Cardenas has waived the right to challenge the amount of court costs on direct appeal by failing to preserve error in the trial court.  We reject this suggestion as inconsistent with controlling authority of the Court of Criminal Appeals.  *See Mayer v. State*, 309 S.W.3d 552, 556 (Tex. Crim. App. 2010).

[3]     *See Johnson v. State*, 389 S.W.3d 513, 515 n.1 (Tex. App.—Houston [14th Dist.] 2012, pet. filed).  As partial explanation for its decision to disregard post-argument supplemental documentation of the court costs at issue,

12

Fourteenth Court of Appeals did not address, the effect in these circumstances of article 103.006 and appellate rules 34.5 and 44.3, as described above and specifically identified in our order. The reasoning reflected in *Johnson* therefore is not dispositive of these considerations.

Cardenas's objection also specifically addressed Rule 34.5(c), arguing without any other authority that this rule "does not contemplate the creation of a document."[4] We note, however, that the text of Rule 34.5(c) also does not exclude

*Johnson* relied upon *Chambers v. State*, 194 S.W.2d 774, 775 (Tex. Crim. App. 1946), and *Lamb v. State*, 931 S.W.2d 611, 613 (Tex. App.—Amarillo 1996, pet. ref'd), for the proposition that, because there was "no indication that this printout was ever brought to the attention of the trial judge," such documents cannot be considered on appeal. *See Johnson*, 389 S.W.3d at 515–16 nn. 1, 3. We do not question that general proposition, but for the reasons explained in the main text, we find it to be inapplicable to these procedural circumstances.

[4] This court's prior precedents do not foreclose the possibility, pursuant to Rule 34.5(c), of ordering the creation of a document that is otherwise required by a law or rule governing the transfer of a case from a trial court to the appellate court. Cardenas relies on *Roventini v. Ocular Sciences, Inc.*, 111 S.W.3d 719 (Tex. App.—Houston [1st Dist.] 2003, no pet.), and *Barker CATV Const., Inc. v. Ampro, Inc.*, 989 S.W.2d 789 (Tex. App.—Houston [1st Dist.] 1999, no pet.), to argue otherwise. But neither of these cases involved the correction of a defect in procedure in order to correct a remediable error, as authorized by Rules 44.3 and 44.4. Both cases are readily distinguishable on their facts. Both were restricted appeals from civil judgments. *See generally* TEX. R. APP. P. 30. One requirement of a restricted appeal is that error must be apparent on the face of the record. *See, e.g.*, *Roventini*, 111 S.W.3d at 721; *Barker CATV*, 989 S.W.2d at 791. In *Roventini*, the court noted that the authorization of a supplemental record in Rule 34.5(c) does not mean that the appellate court will be compelled to consider the supplemental materials, as they may not be relevant. *See*

13

the possibility of supplementation with new documents, the creation of which is otherwise required by law, and article 103.006 does contemplate that a bill of costs shall be certified, signed, and sent upon the appeal of a criminal action, which necessarily occurs after the entry of a final judgment.[5]

Finally, Cardenas asserted that "[a] newly created bill of costs fails to fulfill due process," relying again upon *Johnson* and also on *Harrell v. State*, 286 S.W.3d 315 (Tex. 2009). *Johnson* does not make any express reference to due-process considerations. *Harrell* is procedurally distinguishable because it was a civil proceeding filed by a prison inmate who challenged the withdrawal of funds from

*Roventini*, 111 S.W.3d at 726. Cardenas quotes *Barker CATV* for the proposition that "rule 34.5(c) does not permit the record in a restricted appeal to be supplemented unless it is clear that the item to be considered was before the trial court when it rendered the default judgment," but the next sentence in the opinion explains that this rule "is consistent with the 'face of the record' limitations" of a restricted appeal. *Barker CATV*, 989 S.W.2d at 795. These cases simply do not address the question presented by this appeal, and they certainly do not foreclose supplementation for the reasons described in this opinion.

[5] Cardenas suggests that a document that had not been created at the time of the judgment cannot be an "omitted item" for purposes of Rule 34.5. The argument does not address or otherwise account for Rule 44.3, which expressly authorizes corrections and amendments to address "defects or irregularities" of appellate procedure. TEX. R. APP. P. 44.3. We further note the directive that "A court of appeals must not . . . reverse a judgment . . . if: (1) the trial court's erroneous action or failure . . . to act prevents the proper presentation of a case to the court of appeals; and (2) the trial court can correct its . . . failure to act." TEX. R. APP. P. 44.4(a). If such circumstances exist, "the court of appeals must direct the trial court to correct the error," and then the court "will then proceed as if the erroneous action or failure to act had not occurred." TEX. R. APP. P. 44.4(b).

his trust account to pay court costs, but did not challenge the amount of costs assessed. *Harrell*, 286 S.W.3d at 316–17. In contrast, this is a direct criminal appeal that does purport to challenge the assessment of costs. A contemporary objection in the trial court is not required to raise such an issue on direct appeal, *see Mayer*, 309 S.W.3d at 555–56, so Cardenas was not procedurally prejudiced by his alleged inability to raise his objections in the trial court. Moreover, despite the lack of a written bill of costs at the time of the entry of judgment, completely apart from the availability of direct appeal, Cardenas also has been provided a separate procedural avenue to seek correction of any error in the award of costs. *See* TEX. CODE CRIM. PROC. ANN. art. 103.008(a) ("On the filing of a motion by a defendant not later than one year after the date of the final disposition of a case in which costs were imposed, the court in which the case is pending or was last pending shall correct any error in the costs."). *Harrell* did not address the article 103.008 procedure for correcting court costs. And in any case, that opinion does not purport to specify the only means by which a criminal defendant can contest an assessment of court costs. The ability to raise this objection for the first time on appeal and the availability of the article 103.008 review process both demonstrate that Cardenas was not entirely deprived of due process because of his alleged inability to object to the bill of costs at sentencing in this case.

Accordingly, we overrule Cardenas's objections to the supplementation of the record.

### b. Sufficiency of bill of costs

We measure the sufficiency of the evidence to support the award of costs by viewing all of the record evidence in the light most favorable to the award. *See Mayer*, 309 S.W.3d at 557. In response to our order, the district clerk filed a document which on its face appears to have been generated by the Harris County Clerk's Justice Information Management Systems, commonly known as JIMS.[6]

---

[6] Cardenas objected to the form of the bill of costs on the basis that it was not a "certified copy of a signed cost bill" and therefore fails to conform to the formal requirements of the Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 103.001 (specifying that the bill of costs is to be "signed by the officer who charged the cost or the officer who is entitled to receive payment for the cost"). However, the document has been certified by the district clerk as "a true and correct copy of the original record filed and or recorded" in his office. The certification was signed by a deputy clerk on behalf of the district clerk, who is entitled to receive payment for court costs. *See id.* art. 103.003(a). The entire document, including the signed certification of the district clerk, was filed as a supplemental record in the court of appeals, supported by a separate certification that the documentation of costs is constituted of "true and correct copies of all proceedings, instruments, and other papers specified by [TEX. R. APP. P. 34.5(a)] and matter designated by the parties pursuant to [TEX. R. APP. P. 34.5(b)] in Cause No. 1309968, styled JOSE JUAN CARDENAS vs. The State of Texas in said court." We conclude that the documentation filed at our request by the district clerk as a supplemental record does substantially satisfy article 103.001, in that it is "written," it contains "the items of cost," and it is "signed" by a deputy clerk on behalf of the district clerk, who is "the officer who is entitled to receive payment for the cost."[7] *See* TEX. CODE CRIM. PROC. ANN. art. 102.005(a) (West 2011) ("A defendant

16

To the extent this document had not been reduced to a hard-copy printout and thereby made part of the clerk's record prior to the entry of judgment in this case, we nevertheless consider this document as evidence of the record that was available to the court and to the parties prior to the entry of judgment, which we review in the light most favorable to the award. *See Mayer*, 309 S.W.3d at 557.

The document, entitled "Cost Bill Assessment," itemized the various costs assessed in Cardenas's case. The costs, many of which were assessed pursuant to rules of criminal procedure or statutory directives applicable to any conviction of a felony offense in a district court, are itemized on two pages. The first page lists various costs and a subtotal of $120 of costs, including:

$40 "clerks fee"[7]
$75 "sheriffs fee"[8]
+ $5 "security fee"[9]
$120 subtotal

---

convicted of an offense in a county court, a county court at law, or a district court shall pay for the services of the clerk of the court a fee of $40.").

[7] *See* TEX. CODE CRIM. PROC. ANN. art. 102.005(a) (West 2011) ("A defendant convicted of an offense in a county court, a county court at law, or a district court shall pay for the services of the clerk of the court a fee of $40.").

[8] *See generally id*. art. 102.011 (fees for services of peace officers).

[9] *See* TEX. CODE CRIM. PROC. ANN. art. 102.017(a) ("A defendant convicted of a felony offense in a district court shall pay a $5 security fee as a cost of court.").

17

The first page also lists the following costs which evidently are component parts of the $75 "sheriffs fee"[10]:

$50  "serving capias"[11]
$10  "taking: 01 bonds"[12]
$5   "commitment"[13]
+    $5   "arrest w/o warrant/capias"[14]
$75

---

[10]  Cardenas argues that "the Code of Criminal Procedure mandates that there be a fee record for any Sheriff's costs. *See* TEX. CODE CRIM. PROC. ANN. art. 103.009 ("Each clerk of a court, county judge, justice of the peace, sheriff, constable, and marshal shall keep a fee record."). He presents no authority that an article 103.009 fee record must be filed with a trial court to support the inclusion of a sheriff's fees among the costs chargeable to a defendant convicted of a crime. He also presents no argument that the events described in the appellate record did not actually occur, or that the corresponding costs were not legally authorized or were inaccurately assessed.

[11]  *See id.* art. 102.011(a)(2) ("A defendant convicted of a felony or a misdemeanor shall pay the following fees for services performed in the case by a peace officer . . . $50 for executing or processing an issued arrest warrant, capias, or capias pro fine . . . ."). The appellate record reflects that an alias capias issued in the case on November 30, 2011.

[12]  *See id.* art. 102.011(a)(5) ("A defendant convicted of a felony or a misdemeanor shall pay the following fees for services performed in the case by a peace officer . . . $10 for taking and approving a bond and, if necessary, returning the bond to the courthouse . . . ."). The appellate record reflects that a bond in the amount of $30,000 was approved on October 7, 2011 and filed the next day.

[13]  *See id.* art. 102.011(a)(6) ("A defendant convicted of a felony or a misdemeanor shall pay the following fees for services performed in the case by a peace officer . . . $5 for commitment or release . . . ."). The appellate record reflects that a felony commitment was issued on June 16, 2011.

[14]  *See id.* art. 102.011(a)(1) ("A defendant convicted of a felony or a misdemeanor shall pay the following fees for services performed in the case by a peace officer . . . $5 for . . . making an arrest without a warrant . . . ."). The appellate record reflects Cardenas was arrested on June 15, 2011.

18

The second page carries forward the $120 subtotal from the previous page and lists the following additional costs, culminating in $294 as the "total amount owed":

$120 "page 1 subtotal"
$133 "consolidated court cost"[15]
$4 "jury reimbursement fee"[16]
$25 "DC records preservation"[17]
$2 "support of indg defense"[18]
$6 "support judiciary fee08"[19]

[15] *See* TEX. LOC. GOV'T CODE ANN. § 133.102(a)(1) (West Supp. 2012) (entitled "Consolidated Fees on Conviction," and providing: "A person convicted of an offense shall pay as a court cost, in addition to all other costs . . . $133 on conviction of a felony . . . ."); *see also* TEX. GOV'T CODE ANN. § 102.021(1) (West Supp. 2012).

[16] *See* TEX. CODE CRIM. PROC. ANN. art. 102.0045(a) ("A person convicted of any offense, other than an offense relating to a pedestrian or the parking of a motor vehicle, shall pay as a court cost, in addition to all other costs, a fee of $4 to be used to reimburse counties for the cost of juror services as provided by Section 61.0015, Government Code."). The appellate record contains no indication that the charged offense of aggravated robbery related to a pedestrian or the parking of a motor vehicle.

[17] *See id*. art. 102.005(f) ("A defendant convicted of an offense in a . . . district court shall pay a fee of $25 for records management and preservation services performed by the county as required by Chapter 203, Local Government Code.").

[18] *See* TEX. LOC. GOV'T CODE ANN. § 133.107(a) ("A person convicted of any offense, other than an offense relating to a pedestrian or the parking of a motor vehicle, shall pay as a court cost, in addition to other costs, a fee of $2 to be used to fund indigent defense representation through the fair defense account established under Section 79.031, Government Code."); *see also supra* note 16.

[19] *See id*. § 133.105(a) (West 2008) ("A person convicted of any offense, other than an offense relating to a pedestrian or the parking of a motor vehicle, shall pay as a court cost, in addition to all other costs, a fee of $6 to be used for court-related purposes for the support of the judiciary."); *see also supra* note 16.

$$\underline{+\quad \$4\quad \text{``court technology fund''}[20]}$$

$$\$294\quad \text{``total amount owed''}$$

These fees and costs total $294, the same amount indicated in the judgment. The records provided by the district clerk demonstrate the itemization of these costs without any assessment for Cardenas's attorney's fees.

Since the supplementation of the record, Cardenas has not offered any argument that any of the identified costs are unauthorized, inapplicable, or otherwise improper. Indeed, as detailed above, each assessed cost is authorized by statute or rule, and the circumstances giving rise to each cost are confirmed by the record.[21] Instead of challenging any particular cost, Cardenas has filed several

---

[20] *See* TEX. CODE CRIM. PROC. ANN. art. 102.0169(a) ("A defendant convicted of a criminal offense in a . . . district court shall pay a $4 county and district court technology fee as a cost of court.").

[21] Cardenas does object to our reliance upon docket sheet entries which correspond to the events and circumstances giving rise to the various fees assessed by the clerk as court costs. He contends that "[p]recedent from this court has held that docket sheets are not to be considered as evidence on appeal," relying on *In re Bill Heard Chevrolet, Ltd.*, 209 S.W.3d 311 (Tex. App.—Houston [1st Dist.] 2006, orig. proceeding). That very case describes some circumstances in which a docket sheet may be considered as evidence. *See id.* at 315 ("[D]ocket-sheet entries have, along with other evidence and under limited circumstances, supplied proof that the trial court orally rendered judgment on a certain date. [¶] The trial court's notation on the docket sheet can sometimes be used to support the contention that judgment was orally rendered on a certain date." (internal citations omitted)). It is true that docket entries are not fully sufficient to properly memorialize and document certain trial court rulings, and in certain circumstances they may not constitute sufficient evidence of the matters reflected therein. In this procedural posture, however, we conclude that in the absence of contradictory information, and without prejudice to collateral proceedings

postsubmission letters asserting the impropriety of permitting the record to be supplemented with itemization of the costs by means of a document created after the entry of judgment. Premised upon his contention that we may not consider the supplemental record, Cardenas has urged that we follow the precedents of other courts of appeals which have modified judgments to delete references to costs when the record did not include a bill of costs. In the previously discussed *Johnson* case, the Fourteenth Court of Appeals struck a trial court's assessment of "a specific dollar amount as court costs" because there was "no evidence in the record" to support it.[22] Similarly, in *Tafolla v. State*, the Texarkana court of appeals reversed an award of costs, stating that "[a]bsent a certified bill of costs, the record is insufficient to support the order of court costs."[23] Finally, in *Solomon*

---

pursuant to article 103.008 to correct errors, appropriate docket entries may be sufficient evidence, viewed in the light most favorable to the award, to justify the assessment of statutory court costs in a criminal proceeding.

[22] *Johnson*, 389 S.W.3d at 517. In assessing the sufficiency of the evidence, the Fourteenth Court relied on *Mayer* for the proposition that "sufficiency of the evidence to support assessments of costs contained within judgments may be directly appealed without the necessity of having preserved the issue below." *Johnson*, 389 S.W.3d at 517 (citing *Mayer*, 309 S.W.3d at 555). On the appellant's motion, the court ordered the trial court clerk to supplement the record with a bill of costs, and the clerk declined to do so, explaining that no bill of costs existed. *Id.* The Fourteenth Court noted, "In the face of a sufficiency challenge, an order to supplement the record, and a complete lack of evidence supporting the trial court's assessment of costs, we will not presume the assessment of costs was accurate." *Id.*

[23] *Tafolla v. State*, No. 06-12-00122-CR, 2012 WL 6632767, at *1 (Tex. App.—Texarkana Dec. 20, 2012, no pet. h) (mem. op., not designated for publication). In *Tafolla*, the appellant challenged the court's judgment ordering him to pay costs

*v. State*, the San Antonio court of appeals modified an award of costs because the appellant challenged the sufficiency of the evidence to support an increase in costs imposed after he was originally placed on community supervision.[24] Finding no evidence to support the increase, the court reformed the judgment to the original amount of costs which were not challenged in the appeal.[25]

Because we ordered the supplementation of the appellate record to request a bill of costs, the courts in *Johnson*, *Tafolla*, and *Solomon* confronted different procedural circumstances, and their reasoning is inapplicable to the circumstances before us. To the extent any party to those cases may have requested, or those courts may have considered, the justifications for ordering a supplemental record

---

because the costs were not supported by the "statutorily required bill of costs." *Id.* The State conceded that no bill of costs was filed "outlining the breakdown of court costs" in that case. *Id.* The opinion in *Tafolla* relied on both the Fourteenth Court's *Johnson* opinion and an unpublished opinion from this court, *Levingston v. State*, No. 01-10-00561-CR, 2011 WL 5599973 (Tex. App.—Houston [1st Dist.] Nov. 17, 2011, no pet.) (mem. op., not designated for publication). Notably, *Levingston* did not involve the same issue of an absent bill of costs; rather, in that case the State agreed with the appellant that the judgment imposing costs did not match the trial court's oral pronouncement of judgment. 2011 WL 5599973, at *3.

[24] *Solomon v. State*, No. 04-12-00239-CR, 2012 WL 6604497, at *1 (Tex. App.— San Antonio Dec. 19, 2012, no pet.). Solomon argued that there was no evidence to support a $300 increase in costs from those assessed at the time he was placed on community supervision. *Id.* He also claimed there was no evidence that he had an ability to pay such costs. *Id.*

[25] The court of appeals relied on *Mayer* and *Johnson* in determining that a challenge to the sufficiency of the evidence to support court costs need not be preserved and in finding that there was no evidence in the record to support the $300 increase in costs. *Id.* at *2.

as explained in this opinion, none of those courts explained why supplementation is not authorized by article 103.006 and appellate rules 34.5 and 44.3, as we believe it is.

The supplemental record demonstrates the basis for an award of fees and costs totaling $294. No sum of money was improperly assessed as a cost for attorney's fees. Moreover, we emphasize that while the supplemental record has significantly guided our analysis, even without that roadmap the clerk's record generated in the trial court through the entry of judgment demonstrates facts and circumstances sufficient to justify $294 of costs as directed by the statutes and rules referenced above. Accordingly, we conclude that Cardenas's sufficiency challenge on direct appeal lacks merit.[26] We further note that a specific procedure

---

[26] The State places great weight on its contention that a trial court is not required to include the amount of court costs in its written judgment of conviction in a criminal case, and there is legal authority for the proposition that the amount of costs need not be specified in order for the judgment to be "effective." *Armstrong v. State*, 340 S.W.3d 759, 766–67 (Tex. Crim. App. 2011); *see also* TEX. CODE CRIM. PROC. ANN. art. 42.01, § 1 (describing the required contents of a criminal judgment). We note, however, that the Code of Criminal Procedure requires the Office of Court Administration to "promulgate a standardized felony judgment form" that conforms to the requirements of article 42.01, section 1, and the Code further specifies that a court entering a felony judgment "shall" use the promulgated form. TEX. CODE CRIM. PROC. ANN. art. 42.01, § 4; *see also id.* art. 42.09, § 8(a) ("A county that transfers a defendant to the Texas Department of Criminal Justice under this article shall deliver to an officer designated by the department: (1) a copy of the judgment entered pursuant to Article 42.01, completed on a standardized felony judgment form described by Section 4 of that article; [and] (2) a copy of any order revoking community supervision

23

separate and apart from a direct appeal from the final judgment exists for the purpose of correcting an award of costs. *See* TEX. CODE CRIM. PROC. ANN. art. 103.008. Cardenas has presented no argument why this procedure is not sufficient to provide an opportunity for review of an award of costs for his circumstance or that of other convicted persons. Given the opportunities to challenge an award of fees either on direct appeal, as Cardenas has done, or in a collateral proceeding, as authorized by article 103.008, the clerk's failure to prepare a bill of costs before the entry of judgment simply does not rise to the level of a due process violation. Accordingly, we overrule the challenge to the sufficiency of the evidence to support the award of costs.

---

and imposing sentence pursuant to Section 23, Article 42.12, including: (A) any amounts owed for restitution, fines, and court costs, completed on a standardized felony judgment form described by Section 4, Article 42.01 . . . ."); *id.* art. 42.16 ("If the punishment is any other than a fine, the judgment shall specify it, and order it enforced by the proper process. It shall also adjudge the costs against the defendant, and order the collection thereof as in other cases.").

With respect to the disputed award of court costs in this case, the form of the trial court's judgment does conform to the form promulgated by the Office of Court Administration, which provides for the entry of a dollar amount of "Court Costs." *See* Office of Court Administration, Judgment of Conviction by Court, *available at* http://www.courts.state.tx.us/oca/felonyforms/Judgment_of_Conviction_by_Court.doc.

## Conclusion

We affirm the judgment of the trial court.


Michael Massengale
Justice

Panel consists of Justices Keyes, Massengale, and Brown.

Publish. TEX. R. APP. P. 47.2(b).